UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JON HUME,<br><br>    Plaintiff,<br><br>v.<br><br>UNIVERSAL MUSIC GROUP, INC. and UNIVERSAL MUSIC AUSTRALIA PTY LIMITED,<br><br>    Defendants. | Civil Action No. _____ |

**COMPLAINT**

1. Plaintiff is Jon Hume, a citizen of Australia who resides in Nashville, Tennessee.

2. Defendant Universal Music Group ("UMG") is a corporation organized and existing under the laws of the State of Delaware with its principal office in the United States located at 2220 Colorado Avenue, Santa Monica, CA 90404. It is registered to do business in Tennessee and has been since on or before 1985. It maintains an office in this judicial district.

3. Defendant Universal Music Australia Pty Limited ("UMG Australia") has purported to authorize, through a series of intercompany agreements, other Universal entities, including UMG, to manufacture, sell, and distribute throughout the world, including the United States and in this judicial district, the sound recording at issue entitled "Be Alright" recorded by Dean Lewis. The Defendants have distributed the sound recording throughout the world and the United States, including in Tennessee and this judicial district and received monies generated in this judicial district from sales of the "Be Alright" sound recording.

4. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1338.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1400, because the Defendants "reside" or may be found in this judicial district and are subject to this Court's personal jurisdiction in this judicial district. Venue is likewise proper in the Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this judicial district.

6. Defendant UMG Australia purports to be an Australian corporation, although it holds itself out as "a division" of UMG. UMG Australia entered into agreements to enable UMG to sell and distribute the sound recording at issue in the United States and Tennessee, including in this judicial district. UMG Australia regularly transacts business in the United States by way of various contractual agreements with UMG and with individuals residing in the United States, as well as through its website "https://www.umusic.com.au," which prompts users in the United States to provide their email addresses and sign up for direct communications from UMG Australia regarding its business.

7. This Court has personal jurisdiction over Defendant UMG as it resides in this judicial district and is registered to do business in Tennessee. Upon service of summons or a waiver of service, this Court has personal jurisdiction over UMG Australia under Federal Rule of Civil Procedure 4(k)(2) because UMG Australia is not subject to jurisdiction in any state's courts of general jurisdiction, and because exercising jurisdiction is consistent with the United States Constitution and laws. This Court's exercise of personal jurisdiction under Rule 4(k)(2) comports with due process because UMG Australia has purposefully directed its activities at the United States. Namely, it regularly transacts business with UMG and with individuals residing in the United States; it asserted rights and made misrepresentations to the Plaintiff and it authorized

UMG to infringe directly in the United States by selling the sound recordings in question in the United States; and it operates an interactive website through which it prompts users in the United States to provide their email addresses and sign up for direct communications from UMG Australia regarding its business. Alternatively, this Court has specific personal jurisdiction over UMG Australia based upon the same contacts, but as they relate to Tennessee. Indeed, if any judicial district has personal jurisdiction over UMG Australia, it is this one. UMG Australia directly and frequently communicated with Plaintiff, a Tennessee resident, regarding the recording at issue; UMG Australia obtained the recording at issue from Plaintiff during the course of those communications; and the harm that Plaintiff suffered as a result of UMG Australia's conduct at issue occurred in Tennessee. Personal jurisdiction under either theory is reasonable and fair.

8. On or about September 2015, Plaintiff Jon Hume ("Hume") and a UMG/UMG Australia recording artist named Dean Lewis composed a musical composition entitled "Be Alright" (the "Composition").

9. In connection with the creation of the recording of the Composition, Hume created various tracks (known and referred to as "stems"), each of which captured and embodied original sounds of Hume's playing each instrument used in the music embodied in the recording. Hume also acted as the producer and, using his musical stems, created the original recording of "Be Alright" (the "Original Recording"). Hume, solely, produced the Original Recording and performed and recorded every instrument, excluding Dean Lewis' vocal, embodied on it. Each of those recordings of musical instruments was recorded on an individual stem, which, when combined, composed the entirety of the sounds embodied on the Original Recording, other than the Dean Lewis vocal tracks. Collectively, those stems created and recorded by Hume are referred to as the "STEMS".

3

10. Later in 2016, Michael Taylor, at the time, the managing director of Defendant UMG Australia, requested that Hume send the STEMS to another producer. A true copy of Michael Taylor's email sent to Hume and his wife and manager, Karen Hume, dated July 24, 2016, is attached hereto as **Exhibit A**.

11. As Michael Taylor represented to the Humes in Exhibit A, in order to save time – and money – the STEMS were to be used as "reference," only. Michael Taylor assured the Humes that "no usage of the Stems from the demo [a reference to the Original Recording] would go into the Master."

12. On August 24, 2016, (a true copy of which is attached as **Exhibit B**) Michael Taylor emailed the Humes in the United States and asked if UMG could use the Original Recording and the STEMS embodied therein, combined with other tracks and stems, "using the [Original Recording] in the main." It closed with a "smiley face" symbol.

13. The Humes and UMG Australia then discussed, including communications directed to the United States, giving Hume a producer credit.

14. On September 1, 2016, Karen Hume sent the STEMS from the United States to Michael Taylor at UMG Australia.

15. Aware that the Humes were residing in the United States, Michael Taylor and UMG Australia intentionally and purposefully availed themselves of doing business in the United States and requested and received the STEMS from the Humes. Those communications were directed to the Humes in the United States.

16. No Producer Agreement was completed, nor was producer credit given to Hume.

17. On April 29, 2018, Ally Cole, on behalf of UMG Australia, emailed Karen Hume, requesting Jon Hume's publishing information, in anticipation of releasing "Be Alright." A true

copy of the April 29, 2018 email directed to Karen Hume in the United States is attached hereto as **Exhibit C**.

18. Karen Hume responded to Ally Cole from the United States and asked about a possible release date for the record. A true copy of Ms. Hume's email to Ally Cole dated September 8, 2016 is attached hereto as **Exhibit D.**

19. On May 1, 2018, Michael Taylor, on behalf of UMG Australia, again corresponded with Karen Hume in the United States. He purposefully and intentionally advised the Humes that "[We UMG Australia] did not end up using any of Jon's files [the STEMS] in the final Master." A true copy of Michael Taylor's May 1, 2018 email is attached hereto as **Exhibit E.**

20. In June 2018, "Be Alright" was released by UMG Australia and, pursuant to intercompany agreements, UMG Australia authorized UMG to release "Be Alright" in the United States (the "Released Master").

21. "Be Alright" has been an international sensation. It has been certified in the United States as "5X Platinum," meaning that it has sold at least five million records and has been streamed world-wide over two billion times.

22. On December 7, 2023, Dean Lewis provided Jon Hume with the entire collection of stems comprising the Released Master as a reference for another song for which Dean Lewis was seeking Jon Hume's services. Upon receipt of those stems and listening to them, Mr. Hume discovered that, contrary to UMG's representations, more than fifty percent (50%) of the STEMS embodied in the Original Recording were also embodied in the Released Master. He has identified those STEMS which have been misappropriated. A true copy of Dean Lewis' email to Jon Hume dated December 7, 2023 is attached as **Exhibit F.**

# COUNT I – COPYRIGHT INFRINGEMENT
# AGAINST ALL DEFENDANTS

23. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

24. UMG and UMG Australia have misappropriated the sounds embodied on the STEMS created by Jon Hume, their author, embodied them in the Released Master.

25. Plaintiff's creative contributions to the Released Master are original and rise to a level of independent copyrightability, and as a result, Plaintiff is the author and copyright owner in and to these sounds.

26. These sounds constitute foreign works.

27. The Defendants have concealed and misrepresented to Plaintiff that they have not used the STEMS.

28. As set forth herein, Jon Hume discovered the misappropriation in December 2023.

29. Misappropriation of sounds, digital or otherwise, constitutes copyright infringement.

30. UMG has claimed and registered a Copyright in the sound recording of the Released Master embodying Plaintiff's sounds.

31. The Defendants have directly infringed Plaintiff's Copyright in the STEMS.

32. Jon Hume is the author of the STEMS embodied in the Released Master.

33. After demand, the Defendants have failed to address Plaintiff's claims.

34. Accordingly, pursuant to 17 U.S.C. §§ 504 and 505, Plaintiff seeks appropriate statutory damages, compensatory damages, reasonable attorneys' fees, and costs from Defendants for their direct infringements.

35. Plaintiff also seeks an accounting of all "profits" as defined in 17 U.SC. § 504, attributable to the infringements received by Defendants.

6

Case 3:24-cv-00746   Document 1   Filed 06/19/24   Page 6 of 11 PageID #: 6

## COUNT II – CONTRIBUTORY INFRINGEMENT
## AGAINST UMG AUSTRALIA

36. Plaintiff incorporates the foregoing paragraphs as if fully alleged herein.

37. Additionally, and/or in the alternative, UMG Australia has provided material assistance to and induced Defendant UMG to directly infringe Plaintiff's Copyright in the STEMS as embodied in the Released Master by entering into an agreement and authorizing it to distribute the infringing Released Master in the United States. Without UMG Australia's active material contribution, authorizing it to release and distribute "Be Alright" in the United States, Defendant UMG would have been unable to infringe. Accordingly, Defendant UMG Australia is also liable for all "profits" from those infringements.

38. Accordingly, pursuant to 17 U.S.C. §§ 504 and 505, Plaintiff seeks appropriate statutory damages, compensatory damages, reasonable attorneys' fees, and costs from UMG Australia from its direct and/or contributory infringements.

39. Plaintiff also seeks an accounting of all "profits" received by UMG Australia as defined in 17 U.SC. § 504, attributable to the infringements.

## COUNT III – VICARIOUS INFRINGEMENT
## AGAINST UMG AUSTRALIA

40. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

41. "A defendant can be held vicariously liable if he enjoys a direct financial benefit from the infringing activity and has the right and ability to supervise the infringing activity." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 621 (6th Cir. 2004).

7

42. Additionally and/or in the alternative to the claims above, Defendant UMG Australia supervised UMG's infringement of the STEMS by, among other things, entering into agreements enabling UMG to sell and distribute the Released Master in the United States.

43. Upon information and belief, UMG Australia profited from UMG's infringing activity as UMG paid to UMG Australia a portion of its proceeds from the infringing activity as consideration for these agreements.

44. Accordingly, pursuant to 17 U.S.C. §§ 504 and 505, Plaintiff seeks appropriate statutory damages, compensatory damages, reasonable attorneys' fees, and costs from UMG Australia from their direct and/or vicarious infringements.

45. Plaintiff also seeks an accounting of all "profits" received by UMG Australia as defined in 17 U.SC. § 504, attributable to the infringements

## COUNT IV – DECLARATORY RELIEF FOR COPYRIGHT AUTHORSHIP & OWNERSHIP IN THE RELEASED MASTER AGAINST ALL DEFENDANTS

46. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

47. A substantial controversy exists between Plaintiff, on the one hand, and Defendants on the other, as to whether Plaintiff is an author of the Released Master.

48. A declaration by the Court would terminate the controversy between Plaintiff and Defendants.

49. This Court has the power to declare the rights, status, and other legal relations between the parties pursuant to 28 U.S.C. § 2201, *et seq.*

50. In the alternative to Plaintiff's claim for copyright infringement, Plaintiff seeks a declaration that he is a joint author and qualified copyright claimant of the Released Master.

Plaintiff also seeks a declaration that he owns one hundred percent (100%) of his particular authorship interest in and to the Released Master, which is indivisible.

51. Pursuant to 28 U.S.C. § 505, Plaintiff seeks his reasonable attorneys' fees and costs in connection with seeking this declaration.

### COUNT V – ACCOUNTING FOR THE RELEASED MASTER AGAINST ALL DEFENDANTS

52. Plaintiff incorporates the foregoing paragraphs as if fully alleged herein.

53. Co-owners of a copyrighted work are akin to tenants-in-common, with each co-owner having an undivided, independent right to use the work, subject to a duty to account for profits to the other co-owner(s).

54. As a co-owner of the Released Master, Plaintiff has a right to an accounting from Defendants of any and all profits obtained as a direct or indirect result of Defendants' exploitation of the Released Master, and to payment of Plaintiffs' share of such profits.

55. Defendants have a duty to account for profits obtained, derived, or resulting from the exploitation of the Released Master, including, but not limited to, any other person or entity acting under a license, sublicense, lease and/or transfer of rights under the Released Master issued formally or informally by Defendants.

56. This duty requires Defendants to disclose to Plaintiff all income collected from such exploitation, and to pay Plaintiff his share of the profits.

57. The precise nature and extent of Defendants' income attributable to the rights hereunder are unknown to Plaintiff at the present time and their profits cannot be determined without an accounting of their transactions relating to the exploitation of the Released Master.

58. Moreover, upon information and belief, the accounts presented are of such complexity that adequate relief cannot be obtained at law, and an investigation of said Defendants' accounts are necessary in order to effect justice between the parties and establish the value of Plaintiff's interests.

59. Plaintiff seeks an order from this Court that Defendants render an accounting to Plaintiff of the amounts owed, as well as a judgment against said Defendants, for a sum to be determined in the accounting, with prejudgment and post-judgment interest, as allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for:

1. Compensatory damages pursuant to 17 U.S.C. §504; and/or

2. Statutory damages pursuant to 17 U.S.C. § 505; and

3. A determination of intentional copyright infringement, contributory infringement, and vicarious infringement, as described herein and appropriate compensatory or statutory damages therefor; and

4. In the alternative, a declaration from this Court that Plaintiff is an author and owner of the Released Master; and

5. His reasonable attorneys' fees; and

6. An accounting of all of the Defendants' "profits", as defined in 17 U.S.C. § 504; and

7. An award of all costs in connection with this action; and

8. Pre-judgment and post-judgment interest to the maximum amount allowable under the law; and

9. Such other and further relief as may be appropriate.

Respectfully submitted,

*/s/ Jay S. Bowen*
Jay S. Bowen (TN BPR #2649)
Jacob T. Clabo (TN BPR #036760)
**BUCHALTER, A PROFESSIONAL CORPORATION**
1 Music Circle South, Suite 300
Nashville, TN 37203
629-224-6600
jbowen@buchalter.com
jclabo@buchalter.com

*Attorneys for Plaintiff Jon Hume*