**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | | |
|---|---|---|
| **JON HUME,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNIVERSAL MUSIC GROUP, INC. and UNIVERSAL MUSIC AUSTRALIA PTY LIMITED,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No. 3:24-cv-00746**<br>**Judge Trauger** |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT PRELIMINARY JURISDICTIONAL DISCOVERY**

---

In response to Defendant Universal Music Group, Inc.'s ("Defendant UMG") Motion to Dismiss for Lack of Personal Jurisdiction (the "Motion") (D.E. 14), Plaintiff Jon Hume ("Plaintiff") respectfully seeks leave from this Court to conduct preliminary jurisdictional discovery necessary to respond to Defendant UMG's Motion.

As set forth herein, the Court is empowered with broad discretion in permitting jurisdictional discovery. The Court should exercise this discretion here because Defendant UMG is the sole party to this Action with the information necessary to show—or refute—the basis for Defendant UMG to be a party to this action. To date, Defendant UMG has refused to provide this information to Plaintiff, inhibiting Plaintiff's ability to respond to the Motion. As a result, the Court should grant Plaintiff's request.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Parties.

Plaintiff is a music producer who resides in the State of Tennessee. (D.E. 1, at ¶¶ 1, 8-9). He has sued two parties in this lawsuit: Defendant UMG and Defendant Universal Music Australia Pty Limited ("Defendant UMG Australia"). (D.E. 1).

Defendant UMG is a music company located in the United States. (D.E. 1, at ¶ 2). It is the parent company of various subsidiaries also located in the United States.[1] Defendant UMG Australia purports to be an Australian corporation, although it holds itself out as "a division" of Defendant UMG. (D.E. 1, at ¶ 3).[2] According to the allegations in the Complaint, Defendant UMG Australia authorizes, through a series of intercompany agreements (which are only in the possession of Defendants), other Universal entities to manufacture, sell, and distribute throughout the world the sound recording at issue "Be Alright", (the "Sound Recording"). (*Id.*).

According to the information provided by Defendant UMG's declarant Sheryl Gold, Defendant UMG "is a holding company" which, purportedly, has no involvement with the facts at issue in this litigation. (*See generally* D.E. 16). The substance of this declaration differs from the information that is publicly available concerning the corporate structure of Defendants and their affiliates and subsidiaries.

---

[1] *See* Universal Music Group, at Overview tab, https://www.universalmusic.com/company/ (last visited Aug. 26, 2024) ("We own and operate a broad array of businesses engaged in recorded music, music publishing, merchandising, and audiovisual content in more than 60 territories.").
[2] *See* Universal Music Australia, at Company tab, https://www.umusic.com.au/company/ (last visited Aug. 26, 2024) ("Universal Music Australia (UMA) is a division of Universal Music Group (UMG), the world leader in music-based entertainment, with a broad array of businesses engaged in recorded music, music publishing, merchandising and audio-visual content.").

First, based on its website, Defendant UMG appears to be the entity responsible for the exploitation of the Sound Recording in the United States and in Tennessee.[3] This is corroborated by the corporate structure that Defendant UMG provides to the public, also on its website[4]:




On the same webpage, Defendant UMG lists "Selected Brands From Around the World", and under the section titled "United States", it lists eighteen "imprint" labels, but—based on the information disclosed on Defendant UMG's website—none of these are listed as being standalone entities.[5]

---

[3] *See* Universal Music Group, at Overview tab, https://www.universalmusic.com/company/ (last visited Aug. 26, 2024) ("We . . . produce, distribute and promote the most critically acclaimed and commercially successful music to delight and entertain fans around the world.").
[4] *See id.*, at Organization tab.
[5] *See id.*

Second, the publicly available information concerning the exploitation of the Sound Recording offers no clarity. On the popular music streaming platform Spotify, for instance, only Defendant UMG Australia is credited[6]:




However, the website for the Mechanical Licensing Collective (the "MLC")—the entity responsible for the matching of sound recording copyrights to musical composition copyrights as a result of the Music Modernization Act—shows a wide variety of record labels who are exploiting sound recordings which "match" the musical composition for "Be Alright."[7] According to the MLC—which only deals with exploitations in the U.S.—there are 3,283 sound recording which

---

[6] *See* Dean Lewis, "Be Alright", SPOTIFY, https://open.spotify.com/track/3EPXxR3ImUwfayaurPi3cm?si=3ada022ba0e84720, (last visited August 26, 2024).
[7] *See* "Be Alright", MECHANICAL LICENSING COLLECTIVE, https://portal.themlc.com/catalog/work/813899236, (last visited August 26, 2024).

match the musical composition for "Be Alright." (*See id.*). There are multiple references to Universal among the record labels listed for those sounds recordings, including Defendant UMG Australia, "UMG Recordings, Inc.", "Universal Music", "Universal Music Group Global", and just "Universal". (*See id.*). These publicly available records do nothing to clarify the impression made by Defendant UMG on its website that it is the entity responsible for the exploitation of the Sound Recording in the U.S.

Prior to seeking discovery on this issue, counsel for Plaintiff sought to clarify the above with counsel for Defendant UMG. (*See* Declaration of Jacob T. Clabo, attached hereto as **Exhibit A**) ("Clabo Decl."). On Friday, August 16, 2024, counsel conferred on this issue via the telephone and via email. (*See id.*, ¶¶ 3-4). On Tuesday, August 20, 2024, counsel for Plaintiff followed up with counsel for Defendant UMG to inquire about the status of this request, given Defendant UMG's pending Motion. (*See id.*, ¶ 7). On Wednesday, August 21, 2024, counsel for the parties conferred again via telephone, where counsel for Defendant UMG notified Plaintiff's counsel that he was not "authorized to disclose the UMG entity exploiting the Sound Recording in the U.S." (*See id.*, ¶ 8). Plaintiff's counsel followed on up on this phone call with an email, memorializing the exchange. (*See id.*, ¶ 9).

## II. The Underlying Dispute.

This is a textbook copyright infringement case. In 2015, Plaintiff and Dean Lewis ("Lewis"), a recording artist with Defendant UMG/Defendant UMG Australia, composed the musical composition "Be Alright." (D.E. 1, at ¶¶ 8-9). Plaintiff created various tracks (the "Stems") in connection with the original recording of "Be Alright." (*Id.* at ¶ 9). Lewis later created a different sound recording of "Be Alright" with another producer. (*Id.* at ¶¶ 10-11).

In 2016, Michael Taylor ("Taylor"), the then-managing director of Defendant UMG Australia, requested that Plaintiff send the Stems to this other producer, assuring Plaintiff that the Stems were for "reference" only and would not be used in the master recording. (D.E. at ¶¶ 10-11). A few months later, Taylor asked Plaintiff if UMG could use the Stems in the main recording. (*Id.* at ¶ 12). Plaintiff and UMG Australia then entered into contractual negotiations regarding a Producer Agreement, but it was never executed. (*Id.* at ¶¶ 12-16). Plaintiff sent the Stems to Defendant UMG Australia during the course of these negotiations. (*Id.* at ¶ 14).

At no time did Plaintiff authorize the inclusion of the Stems in any publicly released sound recording of "Be Alright." (D.E. 1, at ¶¶ 12-19). Nevertheless, after Defendant UMG Australia released "Be Alright" and, pursuant to intercompany agreements, authorized Defendant UMG to release "Be Alright" in the United States in 2018, (*id.* at ¶ 20); Plaintiff discovered in 2023 that, contrary to Defendant UMG's representations, more than fifty percent (50%) of the Stems embodied in the original recording were also embodied in the released master, (*id.* at ¶ 22).

Plaintiff filed the underlying lawsuit against Defendants UMG and UMG Australia as a result of their misappropriation of Plaintiff's Stems. (*See* D.E. 1).

## <u>LEGAL STANDARD</u>

In ruling on a motion to dismiss for lack of personal jurisdiction, a district court may rely "upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017). The plaintiff bears the burden of establishing personal jurisdiction, but "that burden is 'relatively slight' where … the district court rules without conducting an evidentiary hearing," and a plaintiff only needs to make a "*prima facie* showing that personal jurisdiction exists." *Id.* (citation omitted).

It is within a district court's discretion to permit jurisdictional discovery. *See Cooper v. Glen Oaks Healthcare LLC*, No. 22-5570, 2023 WL 165961, at *1 (6th Cir. Jan. 12, 2023) (noting that "a court abuses its discretion when it denies jurisdictional discovery arbitrarily" (citation omitted)). Among other circumstances, a district court may permit jurisdictional discovery "to ascertain the facts bearing on [the issue of jurisdiction]." *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n. 13 (1978). It may also do so "to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991); *see Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (acknowledging that jurisdictional discovery is appropriate where the defendant's motion to dismiss for lack of personal jurisdiction "raise[s] disputed issues of fact or seem[s] to require determinations of credibility").

## **ARGUMENT**

The Court should exercise its discretion by permitting Plaintiff to conduct jurisdictional discovery so Plaintiff may substantively respond to Defendant UMG's Motion. *See Bus. Aircraft Leasing, Inc. v. Brian Carn Ministries, Inc.*, No. 3:16-CV-01577, 2017 WL 9807433, at *1 (M.D. Tenn. July 18, 2017) (Chief Judge Crenshaw) (Because "[t]he declarations and the briefs that have been filed in support of the parties' positions actually raise more questions than they answer regarding this Court's jurisdiction," such as who signed the contract at issue and whether any of the defendants were acting as an agent for another defendant, the Court denied the defendants' motions to dismiss without prejudice and held that such motions could be "refil[ed] after the conclusion of jurisdictional discovery."); *see also Telos Holdings, Inc. v. X5 Grp. AB*, No. CIV. 3:08-0079, 2008 WL 1330184, at *1 (M.D. Tenn. Apr. 10, 2008) (Trauger, J.) ("Because the court is unable to rule in the plaintiff's favor on the papers as they stand, it is hereby ORDERED that

the stay of discovery is LIFTED so that the parties may engage in discovery relevant to specific personal jurisdiction only for sixty (60) days from the entry of this Order. Following the period of discovery, both parties may file supplemental briefs with regard to the pending jurisdictional issue. . . ."). Conducting preliminary jurisdictional discovery is routine in cases—including copyright cases—where the facts regarding the activities of a defendant are solely known by the defendant. *See Humantech, Inc. v. Ergonomics Pluc, Inc*., No. 14-CV-12141, 015 WL 1492224, at *8 (E.D. Mich. Mar. 31, 2015) (permitting jurisdictional discovery in copyright-infringement lawsuit).

## I. **Jurisdictional Discovery is Both Necessary and Appropriate So That Plaintiff May Substantively Respond to Defendant UMG's Motion.**

As previously discussed, Defendant UMG contends in its Motion and supporting briefing that dismissal of Plaintiff's claims against it is warranted because Defendant UMG lacks sufficient minimum contacts with Tennessee. (*See* D.E. 14-16). Specifically, it contends that, contrary to the allegations in the Complaint, Defendant UMG is merely a parent company with "no day-to-day operations" in Tennessee; and that it "does not create, develop, perform, market, sell, distribute, or exploit musical compositions or sound recordings" in the United States or Tennessee (nor did it do so with respect to "Be Alright"). (*See* D.E. 16, ¶¶ 3-5).

There is no dispute that the Sound Recording is being exploited and is currently available in the U.S. Even if Defendant UMG's contentions are true, this would indicate that one of its subsidiaries or affiliates is responsible for exploiting Plaintiff's work throughout the United States and Tennessee as alleged in the Complaint. Plaintiff does not know the identity of this alleged subsidiary, as the intracompany agreements regarding the Sound Recording are solely in the possession of Defendant UMG. (*See* D.E. 1, at ¶ 3). Notably, Defendant UMG is silent in their briefing regarding the identify of the purported entity, other than Defendant UMG, who is exploiting the Sound Recording. (*See* D.E. 14-16). Further telling is that Defendant UMG would

not disclose this information to Plaintiff's counsel. (*See generally* Clabo Decl.). Defendant UMG should not be permitted to use its exclusive knowledge regarding its own corporate structure and inner workings as both a sword (to commit copyright infringement) and a shield (to prevent discovery about this infringement). To do so would be inequitable. *See, e.g.*, *Cooper*, 2023 WL 165961, at *1.

The foregoing notwithstanding, the publicly available information concerning Defendant's corporate structure and their exploitation of the Sound Recording reflects a set of facts which is contrary to the information provided by Defendant UMG's declarant. *Compare supra*, notes 1-7 (evidencing Defendant UMG as be related to the U.S. exploitation of the Sound Recording) *with* D.E. 16 (characterizing Defendant UMG as a mere "holding company"). The contradictions between Defendant UMG's filings and the public information which it provides about itself "raise[s] disputed issues of fact or seem[s] to require determinations of credibility." *See Serras*, 875 F.2d at 1214.

The Sixth Circuit has cautioned that permitting jurisdictional discovery is appropriate "to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit [or declaration] denying all jurisdictional facts." *Theunissen*, 935 F.2d at 1459; *see also Functional Pathways of Tennessee, LLC v. Wilson Senior Care, Inc.*, No. 3:10-CV-409, 2010 WL 11474102, at *2 (E.D. Tenn. Nov. 10, 2010) (holding "judicial economy and the parties' interests in a just and economical decision on the issues of personal jurisdiction and venue support allowing limited discovery in this matter"). Defendant UMG should not be rewarded for seeking dismissal on these grounds.

Jurisdictional discovery regarding the role of Defendant UMG in the facts alleged in the Complaint should be permitted.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that the Court grant him leave to conduct jurisdictional discovery so that it may substantively respond to Defendant UMG's Motion.

Respectfully submitted,

*/s/ Jay S. Bowen*

Jay S. Bowen, Esq. (TN BPR No. 2649)
Jacob T. Clabo, Esq. (TN BPR No. 036760)
**BUCHALTER, A Professional Corporation**
1 Music Circle South, Suite 300
Nashville, TN 37203
Telephone: (629) 224-6600
jbowen@buchalter.com
jclabo@buchalter.com

*Attorneys for Plaintiff Jon Hume*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing *Memorandum of Law in Support of Plaintiff's Motion for Leave to Conduct Preliminary Jurisdictional Discovery* was electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing was sent to all parties and counsel of record by operation of the Court's CM/ECF system, and via electronic and/or U.S. mail, postage prepaid on September 13, 2024, to:


Tim Warnock, Esq.
Keane Barger, Esq.
**LOEB & LOEB LLP**
35 Music Square East, Suite 310
Nashville, TN 37203
Telephone: (615) 749-8300
Fax: (615) 676-5189
twarnock@loeb.com
kbarger@loeb.com

Barry Slotnick, Esq. (*pro hac vice*)
**LOEB & LOEB LLP**
345 Park Avenue
New York, NY 10154
Telephone: (212) 407-4000
Fax: (212) 407-4000
bslotnick@loeb.com

*Counsel for Defendant Universal Music Group, Inc.*


*/s/ Jay S. Bowen*
Jay S. Bowen, Esq.